## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LUKE A. GERKIN (#583904)** | **CIVIL ACTION** |
| **VERSUS** | |
| | **19-249-BAJ-SDJ** |
| **DR. HAL MCMURDO, ET AL.** | |

## **NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 6, 2021.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**LUKE A. GERKIN (#583904)**                                               **CIVIL ACTION**

**VERSUS**

                                                                                                 **19-249-BAJ-SDJ**

**DR. HAL MCMURDO, ET AL.**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Motion for Summary Judgment filed on behalf of defendant Dr. Hal McMurdo (R. Doc. 44). The Motion is opposed. *See* R. Doc. 50.

*Pro se* plaintiff, an inmate currently confined at the Dixon Correctional Institute ("DCI"), filed this action pursuant to 42 U.S.C. § 1983 against Dr. McMurdo, Jason Kent, and James LeBlanc, complaining that his constitutional rights were violated due to deliberate indifference to his serious medical needs.[1] Defendant Dr. McMurdo moves for summary judgment, relying upon the pleadings, a Statement of Uncontested Material Facts, and the plaintiff's medical records.

Despite an extension of time to do so, the plaintiff did not timely oppose the instant motion, submitting his opposition well after the deadline. *See* R. Docs. 48 and 50. Regardless, the plaintiff's opposition relies solely upon the pleadings. *See* R. Doc. 50. While the plaintiff's allegations in his unverified Amended Complaint provide context to the evidence provided by the defendants, those allegations are not sufficient to survive a properly supported motion for summary judgment.[2]

---

[1] Defendants Kent and LeBlanc were previously dismissed. *See* R. Docs. 22 and 23.

[2] His complaint is unverified, and thus it is not competent summary judgment evidence. Fed. Rule Civ. P. 56(c)(1); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (verified complaints may potentially be considered as competent summary judgment evidence to the extent the complaint comports with the affidavit requirements of Rule 56). Rule 56, in turn, requires that affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence," and make the averral under penalty of perjury. Fed. Rule Civ. P. 56(c)(4); *King*, 31 F.3d at 346. The plaintiff's Complaint contains no such averral.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323.

Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp., supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint as amended[3], the plaintiff alleges the following: When the plaintiff was transferred to DCI in January of 2018, he was suffering from numerous medical conditions, including severe pain in his left arm due to bone and nerve damage, degeneration of his left hip, sciatica in his left leg, hypertension requiring medication, and diabetes requiring administration of certain medications at specified times. Approximately three days after arriving at DCI, the plaintiff was seen by defendant Dr. McMurdo. Dr. McMurdo issued a duty status allowing him a wheelchair, a bottom bunk restriction, and other provisions to accommodate the plaintiff's poor physical condition. During his second examination by Dr. McMurdo the plaintiff informed Dr. McMurdo that his medication for hypertension needed to be administered at certain times. Dr. McMurdo told the plaintiff that he was using the medication for self-sedation purposes. In response, the plaintiff called Dr. McMurdo an "a$$hole" and an "alcoholic, drunken piece of sh!t." A few days later, the plaintiff's duty status was revoked by Dr. McMurdo, and the provisions for a wheelchair and bottom bunk were removed.

Without the aid of his wheelchair, the plaintiff must walk in order to have his blood levels checked and to eat. More often than not, he is unable to eat due to not having the strength or ability to walk to the dining hall. When the plaintiff inquired how he was supposed to have his accu-checks completed and make it to the dining hall without the aid of a wheelchair, Dr. McMurdo responded, "the best way that you know."

By not administering the plaintiff's pancreatitis medications in the right dosage and at the right times, the plaintiff nearly died and developed diabetes. At some point Dr. McMurdo ordered that the plaintiff be given Hydralazin, even after the plaintiff informed him that he had previously had a bad reaction to the medication. The medication was administered, and the

---

[3] R. Doc. 34.

plaintiff's left side became numb and weak, and he was taken to the emergency room for treatment.

Dr. McMurdo has also refused to issue the plaintiff a duty status which requires the use of flex cuffs for transport to accommodate the pain in the plaintiff's left arm. Instead, the plaintiff is placed in irons within a black box that positions his hands and wrists on top of each other for as long as from 4:00 a.m. until 9:00 p.m. Use of the irons and black box causes pain to the plaintiff, which lasts for two to three weeks. Dr. McMurdo told the plaintiff, "you wore it once, you can do it again." The actions of Dr. McMurdo were taken in response to the plaintiff's name calling and Dr. McMurdo is deliberately subjecting the plaintiff to a sub-standard level of medical care.

A prison official violates the Eighth Amendment's prohibition of cruel and unusual punishment if the official shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976). The official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" and "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists". *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official also must draw that inference. *Id*.

Failed treatments, negligence, and medical malpractice are insufficient to give rise to a claim of deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prisoner who disagrees with the course of treatment or alleges that he should have received further treatment also does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Instead, an inmate must show that prison officials denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints. *Id*. A delay in treatment may violate the Eighth Amendment if the delay

was the result of the prison official's deliberate indifference and substantial harm—including suffering—occurred during the delay. *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006).

### *Duty Status*

While housed at the Elayn Hunt Correctional Center until his transfer to DCI, the plaintiff's duty status was regular with the following restrictions: allow glucose self-monitoring, allow patient supplies, and bottom bunk only. No assistive devices were indicated as needed for the plaintiff. *See* R. Doc. 38-1, p. 245. On January 8, 2018, defendant Dr. McMurdo issued a regular duty status with restrictions: no use of left arm, bottom bunk, may not participate in contact sports, and may not weightlift. On January 14, 2018, Dr. McMurdo issued another regular duty status with an added restriction of wheelchair "x2 days." Dr. McMurdo further noted, "DS for 2 days then [illegible] to perm D/S." As such, the plaintiff's bottom bunk restriction was never removed, and the initial wheelchair restriction was intended to be temporary. *See* R. Doc. 38-3, p. 32-33. Additionally, it appears that the plaintiff was provided with a wheelchair on an as needed basis. *See* R. Doc. 38-1, p. 149, 229, and 253. Furthermore, even after the plaintiff was examined by Dr. Toce, he was not given a duty status that included daily wheelchair use. Rather, he was issued a duty status with the restriction of "wheelchair for long trips." *See* R. Doc. 38-3, p. 32 and 38-1, p. 12.

Turning to the plaintiff's complaints regarding the failure to allow for the use of flex cuffs, on August 2, 2018, the plaintiff refused medical care stating that he could not wear the black box and cuffs due to a bad arm. *See* R. Doc. 38-1, p. 150. On August 6, 2018, the plaintiff again refused medical care because he could not wear the black box due to contractures in his left hand. The plaintiff was noted to be holding a book in his left hand without any problems. *See* R. Doc. 38-1, p. 149. The plaintiff again refused treatment on December 14, 2018, stating, "cant ware the black box due to nerve dam." *See* R. Doc. 38-1, p. 125. On June 13, 2019, the

plaintiff was offered flex cuffs for trips, but still refused medical care because he could not also have a wheelchair. *See* R. Doc. 38-3, p. 104. The plaintiff again refused flex cuffs because he did not have a duty status for a wheelchair on September 11, 2019. *See* R. Doc. 38-3, p. 97. As such, it does not appear that the plaintiff was denied the use of flex cuffs due to any action or inaction on the part of Dr. McMurdo. Rather, it appears that plaintiff refused the use of flex cuffs when made available to him because he also desired the use of a wheelchair.

### *Untimely Administration of Medications*

With regards to the alleged untimely administration of medications, a review of the plaintiff's medical records reveals that as early as January 13, 2018, the plaintiff began periodically refusing glucose monitoring. Furthermore, from August of 2018 to at least January of 2019, the plaintiff was a "no show" nearly every day for glucose monitoring and insulin administration. *See* R. doc. 38-1, p. 35-47. The plaintiff's records also reveal several instances of refusal of medical care, non-compliance with medications, and argumentative behavior by the plaintiff. *See* R. Doc. 38-1. As such, it does not appear that Dr. McMurdo had any involvement in the untimely administration of the plaintiff's medications.

### *Administration of Hydralazine*

Turning to plaintiff's claims regarding the administration of hydralazine, on April 11, 2018, the plaintiff was in the infirmary, discussing why his MRI was not completed when he vomited large amounts of yellow vomit twice. Dr. McMurdo ordered for the plaintiff to be transferred via ambulance to UMC at 9:50 a.m. At 9:55 a.m., Dr. McMurdo ordered not only hydralazine (a vasodilator), but also ordered that clonidine (an antihypertensive) and nitropaste (a vasodilator) be administered. As such, it appears that defendant Dr. McMurdo was treating the plaintiff for a hypertensive event, and the plaintiff was transferred to the hospital for the

same, not due to a bad reaction to hydralazine as alleged by the plaintiff. *See* R. Doc. 38-1, p. 120 and 213.

The record does not show that defendant Dr. McMurdo deliberately denied the plaintiff treatment, purposefully provided him improper treatment, or ignored his medical complaints. Rather, the record shows the plaintiff's disagreement with his treatment. Despite notice and an opportunity to appear and an extension of time within which to do so, the plaintiff has not come forward with any competent summary judgment evidence in opposition to Defendant's Motion for Summary Judgment or to the documentary evidence produced in support thereof. Accordingly, there is nothing before the Court that tends to dispute the defendant's assertions. Based upon the plaintiff's failure in this case to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, the Court concludes that Defendant's Motion is well-taken and that, on the record before the Court, Defendant is entitled to summary judgment as a matter of law.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the Court has original jurisdiction, if the Court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended dismiss of the plaintiff's federal claims, the Court further recommends that supplemental jurisdiction be declined in connection with the plaintiff's potential state law claims.

## **RECOMMENDATION**

It is recommended that the Court decline the exercise of supplemental jurisdiction in connection with any potential state law claims, the Motion for Summary Judgment (R. Doc. 44) be granted, and that this action be dismissed, with prejudice.

Signed in Baton Rouge, Louisiana, on January 6, 2021.

*[signature]*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**